**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
AT WICHITA**

| | |
|---|---|
| David A. Harkness, William G. Hartig, Jr., David Lewandowski, Jene Lewandowski, Ronald Owens, Richard Pullen, Tomey Shabshab, and Donna Zagonel, on behalf of themselves and all others similarly situated; Michael McCartney, Norris Palmer, Bradley Stevens and Margaret Wieland, on behalf of themselves and all others similarly situated,<br><br>      Plaintiffs,<br><br>  v.<br><br>The Boeing Company, a corporation; The Boeing Company Employee Retirement Plan; The Boeing Company Health Plan; Boeing Employee Benefits Committee; Spirit Aerosystems Holdings, Inc., a corporation; the Spirit Aerosystems Retirement Plan for IBEW, WEU and WTPU Employees; and the Spirit Aerosystems Retirement Plan for IAM Employees,<br><br>      Defendants.<br>_____/ | **COMPLAINT --- CLASS ACTION**<br><br>   Case No. 07-1043-WEB<br><br><br>**Jury Trial Demanded** |

**NATURE OF THE ACTION**

Plaintiffs David A. Harkness, William G. Hartig, Jr., David Lewandowski, JeNe Lewandowski, Ronald Owens, Richard Pullen, Tomey Shabshab and Donna Zagonel bring this action on behalf of themselves and all others similarly situated against Defendant The Boeing Company, a Delaware corporation (hereafter "Boeing"); the

Boeing Company Employee Retirement Plan (hereafter "the Boeing Pension Plan"); the Boeing Company Health Plan (hereafter "the Boeing Health Plan"); the Boeing Employee Benefits Committee; Spirit Aerosystems Holdings Inc. ("Spirit"); the Spirit Aerosystems Retirement Plan for IBEW, WEU and WTPU Employees; the Spirit Aerosystems Retirement Plan for IAM Employees; and any other such Spirit Plans, to seek remedies for Defendants' interference with their pension and health-care rights; to clarify and/or claim the benefits owed to them under the Plans and pursuant to contract; to seek remedies for Defendants' unlawful elimination of benefits; to seek remedies for the plans for violations of the Defendants' fiduciary duties; and to declare and establish the rights and responsibilities of the parties.

Plaintiffs Michael McCartney, Norris Palmer, Bradley Stevens and Margaret Wieland likewise bring related claims against Boeing, the Boeing Pension Plan and the Boeing Health Plan to seek remedies for Defendant Boeing's interference with their pension and health-care rights; to clarify and/or claim the benefits owed to them under the Plans and pursuant to contract; to seek remedies for Defendants' unlawful elimination of benefits; and to declare and establish the rights and responsibilities of the parties.

1.      This is a civil enforcement action pursuant to Section 502(a) of ERISA (29 U.S.C. § 1132(a)).  Plaintiffs seek relief pursuant to Sections 502, 510, 204(g), and 404 of ERISA (29 U.S.C. §§ 1132, 1140, 1104, and 1054). In addition, Plaintiffs seek declaratory relief pursuant to 28 U.S.C. §§2201 et seq.

## THE PARTIES

2.      Plaintiff David A. Harkness, born June 23, 1951, worked for Defendant Boeing from November 1978 until on or around June 16, 2005. Defendant Spirit hired him for employment and he began working there as an employee on or about June 17, 2005.

3.      Plaintiff William G. Hartig, Jr., born May 5, 1954, worked for Defendant Boeing from October 20, 1980, until on or around June 16, 2005. Defendant Spirit hired him for employment and he began working there as an employee on or about June 17, 2005.

4.      Plaintiff David Lewandowski, born May 26, 1951, worked for Defendant Boeing from October 1978 until on or around June 16, 2005. Defendant Spirit hired him for employment and he began working there as an employee on or about June 17, 2005.

5.      Plaintiff Jene Lewandowski, born August 10, 1951, worked for Defendant Boeing from October 31, 1972, until on or around June 16, 2005. Defendant Spirit hired him for employment and he began working there as an employee on or about June 17, 2005.

6.      Plaintiff Michael McCartney, born April 14, 1953, worked for Defendant Boeing from April 1, 1980 until on or around June 16, 2005.

7.      Plaintiff Ronald Owens, born August 3, 1954, worked for Defendant Boeing from April 14, 1980 until on or around June 16, 2005. Defendant Spirit hired him for employment and he began working there as an employee on or about June 17, 2005.

8.      Plaintiff Norris Palmer, born February 3, 1951, worked for Defendant Boeing from November 8, 1982 until on or around June 16, 2005.

9.      Plaintiff Richard Pullen, born October 26, 1951, worked for Defendant Boeing from February 13, 1974 until on or around June 16, 2005. Defendant Spirit hired him for employment and he began working there as an employee on or about June 17, 2005.

10.     Plaintiff Tomey Shabshab, born September 18, 1951, worked for Defendant Boeing from April 9, 1982 until on or around June 16, 2005. Defendant Spirit hired him for employment and he began working there as an employee on or about June 17, 2005.

11.     Plaintiff Bradley Stevens, born January 16, 1956, worked for Boeing from April 20, 1989 until on or around June 16, 2005.

12.     Plaintiff Margaret Wieland, born November 12, 1954, worked for Defendant Boeing from September 8, 1988 until on or around June 16, 2005. Defendant Spirit hired her for employment and she began working there as an employee on or about June 17, 2005.

13.     Plaintiff Donna Zagonel, born August 23, 1952, worked for Defendant Boeing from January 10, 1980, until on or around June 16, 2005. Defendant Spirit hired him for employment and he began working there as an employee on or about June 17, 2005.

14.     Defendant Boeing is a corporation with headquarters in the State of Illinois. For many years Boeing has transacted significant business in this District. Boeing is an "employer" within the meaning of 29 U.S.C. §152(2) and Section 3(5) of ERISA (29 U.S.C. § 1002(5)). Boeing likewise is a plan sponsor within the meaning of ERISA and, when acting as plan administrator or trustee, is a plan fiduciary under ERISA.

15.     Defendant Boeing Pension Plan is a pension fund designed to provide eligible participants with periodic income and death benefit protection after retirement. Boeing is

the Plan Administrator for the Boeing Pension Plan, acting through its Employee Benefits Plans Committee ("the EBP Committee"). The Boeing Pension Plan is an "employee pension benefit plan" within the meaning of Section 3(2) of ERISA, 29 U.S.C. §1002(2).

16.     Defendant EBP Committee is a Boeing-related entity, which on information and belief consists of Boeing officers and/or Boeing agents, and to which Boeing has delegated its control over the employee-benefit funds for its employees. Its members are the trustees for the Boeing Plans. The EBP Committee is sued in its capacity as trustee and plan administrator of the employee benefit plans. It is a fiduciary under ERISA.

17.     Defendant Boeing Health Plan is an employee-benefit fund that pays out medical benefits to eligible participants after retirement. Boeing is the Plan Administrator for the Boeing Health Fund, acting through the EBP Committee. The Boeing Health Fund is an "employee welfare benefit plan" within the meaning of Section 3(1) of ERISA, 29 U.S.C. §1002(1).

18.     Spirit Aerosystems Holdings Inc., a Delaware corporation with its headquarters in Kansas, owns and operates a commercial-aircraft facility in Wichita that it purchased from Defendant Boeing in 2005. It is an "employer," within the meaning of ERISA, is a "plan sponsor" and, acting through agents, is a plan administrator and a fiduciary under ERISA.

19.     The Spirit Aerosystems Employee Retirement Plan for IBEW, WEU and WTPU Employees is a pension fund designed to provide eligible participants with periodic income and death benefit protection after retirement. Spirit Aerosystems

Employee Retirement Plan for IBEW, WEU and WTPU Employees is an "employee pension benefit plan" within the meaning of Section 3(2) of ERISA, 29 U.S.C. §1002(2).

20.     The Spirit Aerosystems Employee Retirement Plan for IAM Employees is a pension fund designed to provide eligible participants with periodic income and death benefit protection after retirement. Spirit Aerosystems Employee Retirement Plan for IBEW, WEU and WTPU Employees is an "employee pension benefit plan" within the meaning of Section 3(2) of ERISA, 29 U.S.C. §1002(2).

## JURISDICTION AND VENUE

21.     Pursuant to District of Kansas Rule 40.2, Plaintiffs hereby request that trial in this matter be held in Wichita, Kansas.

22.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and under specific statutory provisions, ERISA Section 502 (e) and (f) (29 U.S.C. § 1132 (e) and (f)).

23.     Defendants are subject to personal jurisdiction in this district based on their contacts with this district, including administration of the plans.  Events giving rise to the claims occurred in this district and the Defendants may be found in this district. Venue is therefore proper in this district pursuant to 28 U.S.C. § 1391, and 29 U.S.C. §§1132(e) and (f).

## STATEMENT OF FACTS

24.     The Plaintiffs all worked for Boeing at its Commercial Facility in Wichita. They worked in positions contained within bargaining units represented by labor unions, including the Society of Professional Engineering Employees in Aerospace, IFPTE Local

2001, AFL-CIO, and the International Association of Machinists and Aerospace Workers, AFL-CIO, and its District 70, which unions engaged in ongoing collective bargaining with Boeing over the terms and conditions of the Plaintiffs' employment.

25.     This collective bargaining between Boeing and its employees' unions led to promises by Boeing to provide various employee benefits for its union-represented employees, including defined-benefit pension benefits and retiree health-care benefits.

26.     To help fulfill Boeing's collective-bargaining promises, the Boeing Pension Plan and the Boeing Health Plan were created and maintained to dispense the promised benefits to retirees.

27.     With respect to pension benefits, the unions and Boeing agreed that the union-represented employees would participate in the Boeing Pension Plan.

28.     The normal retirement age under the Pension Plan is 65. However, the Pension Plan allows employees to retire at age 55 under certain conditions (hereafter "the Early Retirement Pension Benefit").

29.     The Boeing Pension Plan pays benefits under one of two formulas, either the Standard Benefit Formula or the Alternative Benefit Formula (which is composed of a "Core Benefit" and an "Excess Benefit"). Employees who elect to retire under the Early Retirement Pension Benefit receive a monthly pension benefit that is reduced from its normal amount by between 2% and 5% (depending on which formula applies) for each year retirement occurs before age 60. By contrast, an employee who seeks to retire before age 65 -- but who does not qualify for the Early Retirement Pension Benefit -- can receive his pension benefit at age 55 but the monthly benefit is reduced by 6% for each

year retirement occurs before age 65 (hereafter "the Deferred Vested Benefit"), resulting in a significantly smaller monthly benefit.

30.     Another provision of the Boeing Pension Plan protects employees in the event of a "layoff."  Specifically, employees who lose Boeing employment through "layoff" may take advantage of the Early Retirement Pension Benefit if they reach age 55 within six years of the termination of their Boeing employment, enabling them to avoid the higher actuarial penalty that would otherwise apply to the Deferred Vested Benefit. In the parlance of employee benefits, such employees are able to "bridge" to the early retirement age. Hereafter, this is referred to as the Early Retirement Pension Bridge Benefit.

31.     Ordinarily, once individuals leave Boeing employment, by retirement or otherwise, they must arrange for their own health care coverage until they reach age 65 and become eligible for Medicare. The respective unions and Boeing, however, also negotiated a special health-care provision alongside the Early Retirement Pension Benefit. Specifically, an employee who is eligible for the Early Retirement Pension Benefit also qualifies for Boeing-provided health care until he or she becomes eligible for Medicare at 65 (hereafter "the Early Retirement Health Benefit").

32.     Boeing and the unions also agreed that employees who lose Boeing employment through "layoff" may take advantage of the Early Retirement Health Benefit if they reach age 55 within six years of the termination of their Boeing employment. This benefit will be referred to as the Early Retirement Health Bridge Benefit.

33.     The Boeing Health Plan dispenses these retiree-health care benefits.

34.     The Plaintiffs, and all of them, were and/or are participants in the Boeing Pension Plan and the Boeing Health Plan.

35.     In 2004 Boeing announced it was looking to sell the Commercial Facility. It subsequently found a buyer in Defendant Spirit.

36.     Spirit does not have and has never had any corporate affiliation or other such relationship with Boeing.

37.     Boeing and Spirit entered into an Asset Purchase Agreement on or about February 22, 2005. This agreement provided, *inter alia*, that Spirit would take over the ownership and operation of the Commercial Facility from Boeing.

38.     Boeing and Spirit negotiated, as part of the sales agreement for the Wichita facility, provisions relating to the Boeing Pension Plan. They agreed, *inter alia*, that Boeing would transfer its pension liabilities, owing to its former employees who went to work for Spirit, to new pension plans that Spirit would create solely for the purpose of administering those Boeing benefits.

39.     Boeing and Spirit further agreed, in this sales agreement, that Spirit would assume Boeing's liabilities pertaining to certain pension and health care liabilities of Boeing's existing workforce.

40.     On or about March 2005, Boeing announced to its employees at its Commercial Facility in Wichita that Boeing would be laying them off effective May 2005 owing to Boeing's sale of the Commercial Facility.

41.     Spirit announced it planned to operate the facility and produce similar goods. Spirit did not promise to hire any particular employees.

42.     The Boeing employees were then informed that, if they wanted to be considered for a job with Spirit, they were required to submit an application form and waive any privacy rights to their Boeing employment file.

43.     The IAM and SPEEA entered negotiations with both Spirit (as the new employer of the employees) and with Boeing (over the effects of the layoffs).

44.     In its effects bargaining with the unions, Boeing's representatives informed the IAM that all the employees who lost their Boeing employment would have the right to the bridge benefits. Those that had an opportunity to work for Spirit would not have a right to severance benefits, however, because of a special exclusion.

45.     Boeing later changed its position, however, and informed both the IAM and SPEEA that no employees could qualify for the bridge benefits unless they applied to work at Spirit and were refused hire. This condition was one that specifically applied to severance benefits, but it did not apply to either of the bridge benefits.

46.     Boeing informed the union-represented employees, that despite the fact it would be involuntarily terminating their collective employment with Boeing, Boeing would not consider them "laid off" unless they sought a job with Spirit and did not receive an offer of employment from Spirit. Otherwise – if these former Boeing employees did not seek a job with Spirit; or if they sought a job, received an offer but turned it down; or if they sought a job, received an offer and accepted it and began working for Spirit – Boeing would not consider them "laid off" and they would not qualify for the "bridge" to the Early Retirement Pension Benefit and the Early Retirement Health Care Benefit. This information was misleading and intended to encourage

employees to make decisions that Boeing would use to justify its plan to reduce its benefit costs.

47.     Spirit subsequently reviewed the work records of those employees who applied and conducted interviews with their Boeing managers. Spirit hired some, but not all, of those former Boeing employees who sought employment with Spirit.

48.     On or about June 16, 2005, Boeing laid off the majority of the union-represented employees at the Commercial Facility. Others were laid off from Boeing employment at a later date.

49.     Plaintiffs McCartney, Palmer, Stevens and Wieland ceased to be Boeing employees on or about June 16, 2005, when Boeing laid them off from Boeing employment. They did not apply for or otherwise accept employment with Spirit. Hereafter we refer to the individuals, and the class of similarly situated individuals whom they seek to represent, as the "McCartney Class."

50.     On June 17, 2005, Spirit took over the operations of the Commercial Facility. Those former Boeing employees whom Spirit chose to hire started work for Spirit that day.

51.     Plaintiffs Harkness, Hartig, David Lewandowski, Jene Lewandowski, Owens, Pullen, Shabshab and Zagonel ceased to be Boeing employees on June 16, 2005, when Boeing laid them off from Boeing employment. Each applied for work at Spirit, was hired by Spirit, and began work as Spirit employees on or around June 17, 2005. Hereafter we refer to these individuals, and the class of similarly situated individuals whom they seek to represent, as the "Harkness Class."

52.     The terms and conditions of employment with the new employer were different than with Boeing. Spirit did not assume the existing collective bargaining agreements, and indeed did not agree to continue the same employee benefits the employees had with Boeing. This is particularly true of the pension benefits. Instead, the unions were forced to negotiate different benefits that were inferior in important ways from the Boeing benefits, including the lack of future pension accruals under the former pension plan.

53.     In September 2005, the trustees of the Boeing Pension Plan amended the Plan to, *inter alia*, transfer all assets purporting to relate to the Harkness Plaintiff Class to a pension fund or funds to be established by Spirit. As a result of this amendment, employees who were offered and accepted positions at Spirit had their actuarially-determined pension accounts, or parts of them, transferred to Spirit.

54.     As a result of this amendment, the Boeing Pension Plan decreed that the former Boeing employees who went to work for Spirit on or about June 17, 2005 were no longer plan participants in the Boeing Pension Plan.

55.     According to Defendants, the Harkness Plaintiffs were now participants in the Spirit Pension Plans.

56.     All the Plaintiffs had 10 or more years of seniority at the time they were laid off from their Boeing employment, on or about June 16, 2005.

57.     All the Plaintiffs were between 49 and 55 years of age as of June 16, 2005.

58.     Because the Plaintiffs all had 10 or more years of seniority and were between 49 and 55 years of age as of June 16, 2005 – when they were laid off from their Boeing employment – they should all have been entitled to the "bridge" benefit.

12

59.     Through Boeing's EBP Committee, Boeing controls the governance and plan administration of the Boeing Plans.

60.     Boeing's control is subject to the various collective bargaining agreements with its employees' unions, by the governing rules of the plans themselves and ERISA and other applicable law.

61.     The Harkness Plaintiffs have requested clarification of their bridging rights, and /or sought to claim bridging benefits, from the Boeing Plans due to the 2005 layoffs. They were informed by the Pension Plan that they are no longer participants in the Plan because the EBP Committee executed the plan amendment that "transferred" them to the Spirit plans.

62.     The Spirit pension plans have yet to render answers to inquiries as to the Harkness Plaintiffs' right to exercise bridging benefits under the new Spirit pension plans, owing to their layoff from Boeing employment in June 2005.

63.     The McCartney Plaintiffs have requested clarification of their bridging rights, and /or sought to claim bridging benefits, from the Boeing Plans due to the 2005 layoffs. The EBP Committee or its designee has denied them these benefits by the Pension Plan, or has sent clarification they would be denied. The EBP Committee explained they were being denied because they did not seek or accept employment with Spirit, and thus were not "laid off" from Boeing.

64.     Boeing's EBP Committee controls both the Pension Plan and the Health Plan, and Boeing itself has already stated that the Plaintiffs, and those similarly situated to them, do not qualify for bridging benefits due to the June 2005 layoff.

65.     The Plaintiffs, and all of them, have attempted to exhaust their available administrative remedies. Plaintiffs submit that any further effort to exhaust any further remedies under the Plans would be futile. They have written to the Boeing Plans and to the Spirit Plans seeking clarification and/or seeking benefits (if they have turned 55). SPEEA and the IAM have received assurances from Boeing that it considers all the Harkness Plaintiffs and McCartney Plaintiffs not to have been "laid off," and the Boeing Plans have followed suit. SPEEA and the IAM have sued Boeing to enforce the contractual aspects of these promises, and Boeing has disclaimed liability.

## CLASS ACTION ALLEGATIONS

66.     The Harkness Plaintiffs and the McCartney Plaintiffs bring this action pursuant to Rules 23 and 23.2 of the Federal Rules of Civil Procedure on behalf of themselves and respective classes of similarly situated individuals.

67.     The Harkness Class consists of those union-represented Boeing workers in Wichita who were participants in the Boeing Pension Plan as of June 2005, who had at least ten years of vesting service on that date, who were between the ages of 49 and 55 on that date, and who went to work at Spirit on or around June 17, 2005. These individuals should have all been eligible to receive the bridging benefits. On information and belief, this Class is comprised of hundreds of individuals.

68.     The McCartney Class consists of those union-represented Boeing workers in Wichita who were participants in the Boeing Pension Plan on or around June 16, 2005, who had at least ten years of vesting service as of that date, who were between the ages of 49 and 55 on that date, and who did not go to work at Spirit because they did not seek

or accept employment with Spirit at that time. These individuals should have all been eligible to receive the bridging benefits. On information and belief, this Class is comprised of dozens and perhaps hundreds of individuals.

69.     The Plaintiff Class Members are appropriate class representatives because they all meet the above definitional criteria for each Class.

70.     On information and belief, the Classes, as stated above, consist of dozens or hundreds of individuals and as such, all members cannot practically be joined as named parties herein.

71.     This action involves substantial questions of fact and/or law common to the claims of the Classes, including but not limited to the following: whether those who lost their Boeing employment on or about June 16, 2005 due to Boeing's sale of the facility were "laid off;" whether those that did not apply for or accept work at Spirit were not "laid off" from Boeing because they did so apply or accept such work; whether those that were hired by Spirit were somehow not "laid off" from Boeing because of Spirit's decision to hire them; whether, assuming they met the age and service requirements, they were otherwise entitled to the Early Retirement Bridge benefits; whether the Boeing Plans have improperly concluded that those affected by the June 2005 layoff are not entitled to the bridge benefits; whether the Boeing Plans have acted arbitrarily and capriciously in making that improper conclusion; whether the trustees and plan administrator of the Boeing plans are interested or disinterested, thus affecting the standard of review; whether Boeing interfered with their attainment of these bridge benefits by its actions before and after the June 2005 layoff.

72.     In addition, for the Harkness Plaintiffs, the following are common questions of law and fact: whether the trustees of the Boeing Plans breached their fiduciary duties by enacting a plan amendment that failed to protect and indeed sabotaged the Plaintiffs' bridge benefits; whether Boeing interfered with the ability of the Harkness Plaintiff Class to obtain the bridge benefits; whether the Boeing Pension Plan unlawfully cut back on accrued early-retirement benefits; whether the Spirit Pension Plans unlawfully cut back on accrued early-retirement benefits; whether the acts of the Defendants violated ERISA transfer rules.

73.     The claims of the Plaintiffs are typical of the claims of the Classes. All the Plaintiffs have been denied "bridging benefits" to which they would otherwise be entitled based on their age and years of service upon the same grounds as all members of the Classes.

74.     The claims of the Harkness Plaintiffs are based on the same facts as those of the other members of the proposed Harkness Class.

75.     The claims of the McCartney Plaintiffs are based on the same facts as those

76.     of the other members of the proposed McCartney Class.

77.     Plaintiffs will fairly and adequately protect the interests of the class.

78.     Plaintiffs have no interests that are antagonistic to the interests of the Class as a whole.  They are committed to the vigorous prosecution of this action and have retained competent counsel who are experienced in federal litigation and with ERISA and federal labor law.

79.   **Rule 23(b)(1)(A)**.  The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications with respect to individual members of the Classes which would establish incompatible standards of conduct for Defendants.

80.   **Rule 23(b)(1)(B)**.  The prosecution of separate actions by individual members of the Classes would create a risk of adjudications with respect to individual members of the Classes which would as a practical matter be dispositive of the interest of the other members not parties to the adjudications and/or substantially impair or impeded their ability to protect their interests.

81.   **Rule 23(b)(2)**.  Defendants have acted on grounds generally applicable to the Classes thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Classes as a whole.

82.   **Rule 23.2**.   The Classes are comprised of members of unincorporated labor associations, including the IAM and SPEEA. Plaintiffs, as representatives of similarly-situated union members at Boeing, will fairly and adequately protect the interests of the associations and their members.

**FIRST CLAIM FOR RELIEF: UNLAWFUL INTERFERENCE WITH PENSION RIGHTS [BY BOTH CLASSES AGAINST BOEING]**

83.   The Plaintiffs incorporate by reference paragraphs 1 through 82 of the Complaint as though set forth herein in full.

84.     The Harkness Class and the McCartney Class are made up exclusively of current and former Boeing Pension Plan participants, as defined by ERISA, and therefore, Class members have standing under Section 510 of ERISA, 29 U.S.C. §1140.

85.     Under the Boeing Pension Plan, members of the Classes were entitled to the Early Retirement Pension Benefit if they were laid off. They were in fact laid off when Boeing terminated their employment upon the sale of the Commercial facility. Despite the fact Boeing laid them off, Boeing took steps to prevent them from receiving that benefit by, *inter alia*, declaring them not to be laid off, pressuring them in their employment decisions and issuing false and misleading information about their ability to claim Boeing benefits.

86.     Boeing's interference was motivated by a desire to prevent the participants from receiving the Early Retirement Pension Benefit, which benefit is protected by ERISA, and thus to reduce its own cost with respect top the pension plan.

87.     Boeing's actions in this regard violate Section 510 of ERISA, 29 U.S.C. §1140.

**SECOND CLAIM FOR RELIEF: UNLAWFUL INTERFERENCE WITH CLASS HEALTH CARE RIGHTS [BOTH CLASSES AGAINST BOEING]**

88.     Plaintiffs incorporate by reference paragraphs 1 through 87 of the Complaint as though set forth herein in full.

89.     The Classes are made up exclusively of current and former Boeing Health Plan participants, as defined by ERISA, and therefore, Class members have standing under Section 510 of ERISA, 29 U.S.C. §1140.

90.     Under the Plan, members of the Classes were entitled to the Early Retirement Health Care Benefit if they were laid off. They were in fact laid off when their Boeing employment was terminated. Despite the fact they were laid off, Boeing took steps to prevent them from receiving that benefit by, *inter alia*, declaring them not to be laid off, pressuring them in their employment decisions and issuing false and misleading information about their ability to claim Boeing benefits.

91.     Boeing's decision to pressure its employees to seek employment with Spirit, and/or not to treat them as laid off, was motivated by a desire to prevent the participants from receiving the Early Retirement Pension Benefit, which benefit is protected by ERISA, and thus reduce its own costs for those benefits.

92.     Boeing's actions in this regard violate Section 510 of ERISA, 29 U.S.C. §1140.

**THIRD CLAIM FOR RELIEF: CLARIFICATION AND ENFORCEMENT OF RIGHTS UNDER BOEING PENSION PLAN [BOTH CLASSES]**

93.     Plaintiffs incorporate by reference paragraphs 1 through 92 of the Complaint as though set forth herein in full.

94.     The Classes are made up exclusively of current and former Boeing Plan participants, as defined by ERISA, and therefore, the Plaintiffs have standing under Section 502 of ERISA, 29 U.S.C. §1132.

95.     The Boeing Pension Plan has been asked in writing to clarify whether, in its opinion, Plaintiffs, who lost their Boeing employment due to the sale of the Commercial Division to Spirit, were "laid off" for purposes of the Boeing Pension Plan, and whether they are entitled to the Early Retirement Benefit. The Boeing Pension Plan has either

refused to answer the question – by referring those hired by Spirit to that employer – or has stated that those who did not apply are not entitled to the benefit.

96.    To the extent that the Boeing Pension Plan has articulated its position on eligibility for "bridging" benefits, Plaintiffs have been notified that they will not be permitted to receive early retirement benefits under the "bridging" provisions.  Plaintiffs believe that this is a violation of their rights under the Boeing Pension Plan.

97.    The decision of the Boeing Pension Plan and the Boeing EBP Committee in refusing to allow the Plaintiffs the Early Retirement Pension Benefit has been not only incorrect, but also arbitrary and capricious and contrary to the governing terms of the plan and the law.

98.    Pursuant to 29 U.S.C. §1132(a), Plaintiffs seek from the Court a clarification of rights for the Plaintiffs and the other similarly-situated participants who make up the Class.  Pursuant to 29 U.S.C. §1132(a), Plaintiffs seek to enforce the rights of the Class under the Boeing Pension Plan and to recover benefits owed to the Class.

99.    Some of the Plaintiffs and Class members – and more everyday – are turning 55 years of age and thus become eligible to claim the Early Retirement Pension Benefit. The Plaintiffs thus also seek the right to claim that benefit from the Pension Plan, which has wrongly denied it.

## FOURTH CLAIM FOR RELIEF: CLARIFICATION AND ENFORCEMENT OF RIGHTS UNDER BOEING HEALTH PLAN [BOTH CLASSES]

100.   Plaintiffs  incorporate by reference paragraphs 1 through 99 of the Complaint as though set forth herein in full.

101.    The Classes are made up exclusively of current and former Boeing Health Plan participants, as defined by ERISA, and therefore, the Plaintiffs have standing under Section 502 of ERISA, 29 U.S.C. §1132.

102.    The Boeing Health Plan has been asked in writing to clarify whether, in its opinion, Plaintiffs, who lost their Boeing employment due to the sale of the Commercial Division to Spirit, were "laid off" for purposes of the Plan, and whether they are entitled to the Early Retirement Benefit. The Boeing Health Plan has yet to answer that question.

103.    The reasoning employed by Boeing, the Boeing Health Plan and the Boeing EBP Committee in refusing to allow the Plaintiffs the Early Retirement Health Benefit has been not only incorrect, but has been arbitrary and capricious and contrary to the governing terms of the plan and the law.

104.    Pursuant to 29 U.S.C. §1132(a), Plaintiffs seek from the Court a clarification of the rights of the Plaintiffs and the other similarly-situated participants who make up the Classes. Pursuant to 29 U.S.C. §1132(a), Plaintiffs seek to enforce the rights of the Classes under the Boeing Health Plan and to recover benefits owed to the Class members.

105.    Some of the Plaintiffs and Class members – and more everyday – are turning 55 years of age and thus become eligible to claim the Early Retirement Health Benefit. The Plaintiffs thus also seek to claim that benefit from the Health Plan, which has wrongly denied it.

## FIFTH CLAIM FOR RELIEF: BREACH OF CONTRACT AGAINST BOEING [BOTH CLASSES]

106.    Plaintiffs, and all of them, were members of collective bargaining units covered by collective bargaining agreements, wherein Boeing pledged to provide them with the Early Retirement Pension Benefit and the Early Retirement Health Benefit.

107.    Boeing has acted in derogation of that promise by taking actions that have interfered with those rights. These include but are not limited to the following: announcing to all concerned that it did not believe members of the Plaintiff Classes should receive the bridge benefits; pressuring the Plaintiffs to apply for work with Spirit; coding the laid-off individuals with labels other than "laid off"; applying new rules to prevent their attainment of the promised benefits; and having its officers and agents on the EBP Committee act in ways that undermined the Plaintiffs' right to those benefits.

108.    By failing to abide by contractual promises to the Plaintiffs, Boeing breached its collective-bargaining promises to them, in violation of 29 U.S.C. §185.

## SIXTH CLAIM FOR RELIEF: UNLAWFUL REDUCTION OF EARLY RETIREMENT BENEFIT BY BOEING, THE EBP COMMITTEE and THE BOEING PENSION PLAN [HARKNESS PLAINTIFFS]

109.    Plaintiffs incorporate by reference paragraphs 1 though 108 of the Complaint as though set forth herein in full.

110.    The Early Retirement Pension Benefit constitutes "an early retirement benefit" and/or "a retirement-type subsidy" for purposes of 29 U.S.C. § 1054(g).  Under the Boeing Plan, as soon as they reached 10 years of vesting service and were within six

years of age 55, Class members were entitled to the "bridging" benefits in the event of a layoff.

111.    The amendment of the Boeing Plan transferring certain Plan assets to Spirit, and the actual transfer of those assets and responsibilities, has had the effect of eliminating the "bridging" provision of the Early Retirement Benefit for the Harkness Plaintiffs, thereby decreasing the accrued benefits of the Harkness Plaintiffs and other persons similarly situated, in contravention of 29 U.S.C. § 1054(g).

112.    The Harkness Plaintiffs and the similarly situated Class members are entitled to "bridging" benefits and have been injured by the foregoing conduct of Defendants.

### SEVENTH CLAIM FOR RELIEF: CLARIFICATION AND ENFORCEMENT OF RIGHTS UNDER SPIRIT PENSION PLANS [HARKNESS CLASS]

113.    Plaintiffs  incorporate by reference paragraphs 1 through 112 of the Complaint as though set forth herein in full.

114.    The Harkness Class is made up exclusively of current and former Boeing Plan participants, as defined by ERISA, and therefore, the Harkness Plaintiffs have standing under Section 502 of ERISA, 29 U.S.C. §1132.

115.    The Spirit Pension Plans have been asked in writing to clarify whether the Harkness Plaintiffs, who went to work at Spirit after being laid off from Boeing, are entitled to exercise the Early Retirement Pension Bridge Benefit due to the sale of the Commercial Division to Spirit.

116.    The Spirit Pension Plans have thus far failed to answer the question, despite multiple inquiries. Any and all exhaustion requirements under the Boeing Pension Plan to obtain such a clarification have been fulfilled.

117.    Pursuant to 29 U.S.C. §1132(a), Plaintiffs seek from the Court a clarification of rights for the Plaintiffs and the other similarly-situated participants who make up the Harkness Class.  Pursuant to 29 U.S.C. §1132(a), the Harkness Plaintiffs seek to enforce the rights of the Class under the Boeing Pension Plan and to recover benefits owed to that Class.

118.    Some of the Harkness Plaintiffs – and more everyday – are turning 55 years of age, and thus eligible to claim the Early Retirement Pension Bridge Benefit. The Plaintiffs thus also seek to claim that benefit from the Spirit Pension Plans, which have wrongly denied it.

**EIGHTH CLAIM FOR RELIEF: UNLAWFUL REDUCTION OF EARLY RETIREMENT BENEFIT BY SPIRIT AND SPIRIT PENSION PLANS**

119.    Plaintiffs incorporate by reference paragraphs 1 through 118 of the Complaint as though set forth herein in full.

120.    The Early Retirement Pension Benefit constitutes "an early retirement benefit" and/or "a retirement-type subsidy" for purposes of 29 U.S.C. § 1054(g).  Under the Boeing Plan, as soon as they reached 10 years of vesting service and were within six years of age 55, Class members were entitled to the "bridging" benefits in the event of a layoff.

121.    The creation and adoption of the Spirit Pension Plans, and the terms thereof, that did not account for bridge benefits generally or in this situation, and the acceptance of the transferred rights and responsibilities and assets from the Boeing Pension Plan, has apparently had the effect of eliminating the "bridging" rights of the Early Retirement Benefits for the Harkness Plaintiffs, thereby decreasing the accrued benefits of the Harkness Plaintiffs and other persons similarly situated, in contravention of 29 U.S.C. § 1054(g).

122.    The Harkness Plaintiffs and the similarly situated Class members are entitled to those "bridging" benefits and have been injured by the foregoing conduct of the Defendant Spirit Pension Plans.

## NINTH CLAIM FOR RELIEF: BREACH OF FIDUCIARY DUTIES BY BOEING EBP COMMITTEE [ALL PLAINTIFFS]

123.    Plaintiffs  incorporate by reference paragraphs 1 through 122 of the Complaint as though set forth herein in full.

124.    Boeing's EBP Committee has fiduciary responsibilities to the Boeing Pension Plan and Boeing Health Plan and to the participants and beneficiaries in those plans.

125.    As a fiduciary, the Boeing EBP Committee is required to discharge its duties solely in the interest of the participants and beneficiaries of the Plans.  29 U.S.C. §1104(a)(1)(A).

126.    As a fiduciary, the Boeing EBP Committee has a duty to exercise care, prudence, and diligence in the performance of its responsibilities.  29 U.S.C. §1104(a)(1)(B).

127.    As a fiduciary, the Boeing EBP Committee has a duty to administer the Plans in accordance with the documents and instruments governing the Plans and in accordance with ERISA.  29 U.S.C. §1104(a)(1)(D).

128.    The conduct of the Boeing EBP Committee in denying the Early Retirement Benefit and the Early Retirement Health Care Benefit to otherwise qualified participants, by passing and incorporating the September 2005 amendment which had the effect of damaging the rights of the Harkness Plaintiffs to the bridge benefit, and by structuring the transfer of certain plan assets and liabilities to the Spirit Plans, all had the effect of breaching its fiduciaries duties to the Plans and to their participants and beneficiaries, all in violation of ERISA.

### TENTH CLAIM FOR RELIEF: UNLAWFUL TRANSFER OF PLAN ASSETS AND RESPONSIBILITIES BY ALL DEFENDANTS EXCEPT BOEING HEALTH PLAN [BY HARKNESS PLAINTIFFS]

129.    Plaintiffs incorporate by reference paragraphs 1 through 128 of the Complaint as though set forth herein in full.

130.    Sometime in 2005, Boeing and Spirit agreed to a transfer of certain benefits and liabilities from the Boeing Pension Plan to the Spirit Pension Plans.

131.    Boeing hoped thereby to rid itself of any responsibilities to the members of the Harkness Class and to all former participants who were hired by Spirit on or around June 17, 2005.

132.    Under the law, ERISA Section 1058, the parties were required to make sure that the plan participants had, *inter alia*, the same benefits after the transfer that they had before the transfer.

133.   In fact, however, the members of the Harkness Class do not have the same benefits after the transfer, in particular they have lost their bridging benefits.

134.   By arranging for such a transfer, and by agreeing to such a transfer under terms where not all rights were maintained, Boeing, the Boeing Pension Plan, the Boeing EBP Committee, Spirit and the Spirit Pension Plans have violated their obligations to the Harkness Plaintiff participants, as set by ERISA.

## ELEVENTH CLAIM FOR RELIEF: THIRD-PARTY BENEFICIARY CLAIM AGAINST SPIRIT FOR LIABILITIES ASSUMED IN SALES AGREEMENT [HARKNESS PLAINTIFFS]

135.   In the sales agreement between Boeing and Spirit, the parties made provision for the various employee-benefit issues involved in the transaction.

136.   Some issues were inserted into that agreement that need not have been inserted under ERISA or other law.

137.   Spirit assumed liability from Boeing for certain pension and health care obligations arising from the sale of the facility. This assumption of liability may include all or some of the benefits referenced in this suit.

138.   Plaintiffs seek to enforce their rights as third-party beneficiaries of that promise to ensure that someone provides them with the benefits that they were promised.

## TWELFTH CLAIM FOR RELIEF: DECLARATORY JUDGMENT AS TO PARTIES' RIGHTS AND RESPONSIBILITIES

139.   Plaintiffs  incorporate by reference paragraphs 1 through 138 of the Complaint as though set forth herein in full.

140.    Plaintiffs invoke the jurisdiction of this Court to establish and declare the legal rights and responsibilities of the Plaintiffs and all similarly-situated members of the Classes, Boeing, the Boeing Pension Plan, the Boeing Health Plan, Spirit and the Spirit Pension Plans as to the Early Retirement Pension Benefit and the Early Retirement Health Care Benefit and the bridge benefits thereunder.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs request that this Court:

(A)    Certify this action as a class action, and appoint Plaintiffs as the representatives for the classes and the undersigned attorneys as Class counsel;

(B)    Declare the rights of the Plaintiffs to the Early Retirement Pension Benefit and the Early Retirement Health Care Benefit;

(C)    Declare the rights of the Plaintiffs under the applicable laws and governing documents;

(D)    Require specific performance of Boeing's contractual promises to the Plaintiffs;

(E)    Award, pursuant to the breach-of-contract claims, damages to the Plaintiffs in an amount to be proved at trial;

(F)    Enjoin the Defendants, as proves appropriate during the course of the litigation, to take whatever steps are necessary to provide the Plaintiffs with Early Retirement Pension Benefit and the Early Retirement Health Care Benefit pursuant to the bridging provisions, and to restore to the appropriate plans the needed language, rights, responsibilities and funds necessary to pay the proper benefits to the Plaintiffs.

(G)     Order appropriate equitable relief, pursuant to ERISA and the contracts, to make the Plaintiffs whole for any losses that may be remedied equitably.

(H)     Award the Plaintiffs their reasonable attorneys' fees and costs.

(I)     Order such other relief as the Court deems just and proper.


Dated: February 16, 2007

                            Respectfully submitted,


                              s/ Tom E. Hammond
                            Tom E. Hammond, #10242
                             tehammond1@yahoo.com
                            Hammond, Zongker & Farris LLC
                            727 N. Waco Street, Suite 200
                            P.O. Box 47370
                            Wichita, KS 67201
                            (316) 262-6800; (316) 262-3770 (fax)

                            Attorney for the Plaintiffs


## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand jury trial on all issues herein triable to a jury.

Dated: February 16, 2007            Respectfully submitted,


                              s/ Tom E. Hammond
                            Tom E. Hammond, #10242
                             tehammond1@yahoo.com